UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KERIEKAN PALMER,

      **Plaintiff,**

v.                               **Case No: 6:24-cv-0989-PGB-NWH**

CITY OF DAYTONA BEACH,
TRAVIS BARRETT, COLLIN
HOWELL and CARNEISHA
MOORE,

      **Defendants.**

                                        /

## ORDER

This cause is before the Court upon the following filings:

1.      Defendant City of Daytona Beach's (the "**City**") Motion for Summary Judgment (Doc. 44 (the "**City's Motion**")), the City's Notice of Filing Exhibits in Support of the City's Motion (Doc. 45), Plaintiff Keriekan Palmer's ("**Plaintiff**") Response to the City's Motion (Doc. 55), and the City's Reply (Doc. 59 (the "**City's Reply**"));

2.      Defendants Travis Barrett ("**Barrett**") and Collin Howell's ("**Howell**")[1] Motion for Summary Judgment (Doc. 46 (the

---

[1]    Herein, Barrett and Howell will collectively be referred to as the "Defendant Officers." Further, the Defendant Officers and the City will collectively be referred to as the "Moving Defendants." The Court notes that Defendant Carneisha Moore ("**Moore**"), who is proceeding *pro se*, is not a party to the instant Motions. (Docs. 44, 46).

"**Defendant Officers' Motion**")),[2] Plaintiff's Response to the Defendant Officers' Motion (Doc. 56), and the Defendant Officers' Reply (Doc. 60); and

3. Plaintiff and the Moving Defendants' Joint Stipulation of Agreed Material Facts (Doc. 43 (the "**Joint Stipulation**")).

Upon consideration, the Motions are due to be granted in part and denied in part.

## I. BACKGROUND

Through this action, Plaintiff sues the Defendant Officers and the City, asserting federal claims under 42 U.S.C. § 1983 and related state law claims arising from an allegedly unlawful arrest (the "**Subject Arrest**"). (Doc. 2-1).

Plaintiff was initially arrested on October 6, 2019 (the "**Initial Arrest**") after an alleged incident of domestic violence involving his then-wife, Michele Howard ("**Howard**") and Howard's daughter, Moore. (Doc. 43, ¶ 1). Plaintiff was accused of striking Howard and Moore during this incident. (*Id.*). On the day of the Initial Arrest, Howard, Moore, and Mariana Albright—a friend of Howard's and witness to the underlying incident—each submitted a sworn statement to the City's Police Department setting forth Plaintiff's alleged conduct. (Doc. 45-3).

Following the Initial Arrest, a criminal case was opened against Plaintiff (the "**Domestic Violence Case**") and an Order Regarding Contact Before Trial (Doc.

---

[2]  Collectively, the City's Motion (Doc. 44) and the Defendant Officers' Motion (Doc. 46) will be referred to as the "Motions."

45-4 (the "**Restraining Order**")) was entered as a condition of Plaintiff's release from custody. The Restraining Order prohibited Plaintiff from having contact with either Howard or Moore. (Doc. 43, ¶¶ 2–3). Among other things, the Restraining Order prohibited Plaintiff from "communicating [with Howard or Moore] orally or in written form, either in person, telephonically, electronically, or in any other manner, either directly or indirectly through a third person." (Doc. 45-4, p. 1). It further forbade Plaintiff from going "within 500 feet of" Howard or Moore's "current or future residence[s]" or "place[s] of employment," and prohibited him from "knowingly go[ing] within 500 feet of [their] automobile[s] at any given time." (*Id.*). The Restraining Order cautioned that, if Moore or Howard "attempt[ed] to contact" Plaintiff, he would be "violating this Order if [he] communicate[d]" in response. (*Id.*). Finally, the Restraining Order contained the following language regarding the consequences that would be imposed if Plaintiff violated its terms:

> Violation of this Order will subject you to arrest. Upon probable cause to believe that you violated the terms of this Order, law enforcement is authorized, pursuant to Sec. 901.15, Florida Statutes, to conduct a warrantless arrest of you, the Defendant. A willful violation of the terms of the Order constitutes a misdemeanor of the first degree, pursuant [to] Sec. 741.29(6), Florida Statutes. This carries a maximum punishment upon conviction of one (1) year in jail and a fine of $1,000.00, or may subject [you] to a criminal contempt charge and/or result in revocation of bond and/or pretrial release.

(*Id.*).

3

One month after Plaintiff's Initial Arrest, on November 6, 2019, Moore contacted the City's police department (the "**Police Department**") and alleged that Plaintiff had violated the Restraining Order. (Doc. 43, ¶ 4). Thus, at approximately 3:44 p.m., Moore completed a sworn statement (Doc. 45-5 ("**Moore's Sworn Statement**")) at the Police Department setting forth Plaintiff's alleged conduct. (*Id.* ¶ 5; Doc. 45-5). Therein, Moore stated that, despite the Restraining Order, Plaintiff "was driving today on Orange Ave [and] he through [sic] up his hands like he was holding a gun and was acting like he was shooting me yelling out the window at me so I called the police[.] I was going west bound on MLK he was goin[g] inboud [sic] on Orange Ave." (Doc. 45-5). Moore stated she also "called the police because [Plaintiff] has a no contact order and [has] been calling my uncle[,] went to my dad's house[, and] keep[s] sne[a]king in my mom[']s] yard when we[']re at work." (*Id.*).

The next night, on November 7, 2019,[3] Plaintiff called the Police Department and asserted that Moore was following him. (Doc. 43, ¶ 6). According to the Charging Affidavit for the Subject Arrest (Doc. 46-6 (the "**Charging Affidavit**")), when Plaintiff's call came in, a sergeant with the Police Department ("**Sergeant Conde**") "reviewed the call and recognized [Plaintiff's] name" as being the subject

---

[3]    Although the Joint Stipulation states that the Subject Arrest occurred the night of November 6, 2019, this conflicts with the evidence submitted by the parties, which reflects that the Subject Arrest occurred the subsequent night. (*E.g.*, Docs. 46-6, 46-7, 46-10, 46-11). Consequently, the date provided in the Joint Stipulation appears to be the result of a scrivener's error. In any event, the Court's analysis would remain the same regardless of whether the Subject Arrest occurred on November 6, 2019 or November 7, 2019.

of Moore's Sworn Statement from the prior day. (Doc. 46-6, p. 1). Sergeant Conde thus "contacted the front desk officer" and "confirmed that the complaint affidavit was still at the front desk" and that Plaintiff "was still wanted."[4] (*Id.*).

Plaintiff was instructed to wait for the police at the "D Town" store on Orange Avenue in Daytona Beach, Florida, and Plaintiff did. (Doc. 43, ¶¶ 7, 9). The Defendant Officers were dispatched and were the first to arrive on the scene and make contact with Plaintiff, who identified himself. (*Id.* ¶¶ 9–10). Shortly thereafter, the Defendant Officers were joined by nonparty officers Melanie Cucco ("**Cucco**") and Calvin Yang ("**Yang**").[5] (*Id.* ¶ 8). Upon arrival, the Defendant Officers proceeded to handcuff Plaintiff so that they could take him into custody. (*Id.* ¶ 10). However, in the course of Plaintiff's arrest, he ended up face down on the ground. (*Id.* ¶ 11). Further, in the Charging Affidavit, Barrett, who asserts therein that Plaintiff was resisting arrest, describes that he "struck [Plaintiff] in the face with a closed fist . . . ." (Doc. 46-6, p. 3).

---

[4] Plaintiff does not rebut these facts contained within the Charging Affidavit. Accordingly, the Court deems them admitted. *Aning v. Fed. Nat'l Mortg. Ass'n*, 663 F. App'x 773, 776 (11th Cir. 2016) (holding that a court may deem facts admitted when they remain unrebutted in response to a motion for summary judgment); *see Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."). In any event, it is clear from the body cam footage that the Defendant Officers are aware of the existence of the Moore Sworn Statement, as upon Plaintiff identifying himself, Howell immediately states, "Hey man, listen, you've got an affidavit out for your arrest right now," as he grabs Plaintiff's arm, seemingly to place him in handcuffs. (Doc. 45-6, 00:30–00:38).

[5] Although Yang was initially named as a Defendant in this case, the claims against Yang have since been dismissed without prejudice. (Doc. 75).

As a result of the foregoing, Plaintiff was charged with violating the Restraining Order and with resisting arrest without violence (the "**new charges**"). (*E.g.*, Doc. 46-6, pp. 1–2; Doc. 45-8; Doc. 2-1, ¶¶ 69–70). Plaintiff avers that this led to his bond being revoked in the Domestic Violence Case and he was thus reincarcerated. (Doc. 2-1, ¶¶ 67–68). Ultimately, Plaintiff entered a plea agreement wherein he pled *nolo contendere* to both a misdemeanor battery charge for domestic violence and a simple battery charge and the new charges were dismissed. (Doc. 45-8; Doc. 2-1, ¶¶ 71–73).

The Moving Defendants have submitted body cam footage of the Subject Arrest for the Court's consideration. (Docs. 45-6, 45-7, 46-14 (collectively, the "**body cam footage**")). The body cam footage conveys that the arrest took between one and two minutes to effect. (*E.g.*, Doc. 45-6, 00:35–1:43). However, the body cam footage does not clearly depict the entire course of events surrounding Plaintiff's arrest. (*E.g.*, *id.*). For a material portion of the arrest, the body cam footage is dark, unclear, or provides a truncated view of the scene, displaying, for example, the back or right arm of one of the Defendant Officers without a clear view of Plaintiff beneath him. (*See, e.g.*, *id.*). Further, while the Defendant Officers verbally state in the body cam footage that Plaintiff is resisting, Plaintiff also audibly refutes such statements. (*Id.*). The body cam footage depicts a fresh injury to Plaintiff's forehead following the arrest. (*E.g.*, Doc. 45-7, 4:48). After the Subject Arrest, Plaintiff was transported to a local hospital, where he was

medically cleared before he was taken to the Volusia County Branch Jail. (Doc. 43, ¶ 13).

As a result of the foregoing, Plaintiff filed the instant suit against the City, Defendant Officers, and Moore. (Doc. 2-1 (the "**Complaint**")). In the Complaint, Plaintiff brings two causes of action against the Defendant Officers individually under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments, including for the use of excessive force in effecting the arrest (Count I), and for unreasonable search and seizure, as Plaintiff asserts his arrest was unlawful (Count IV). (*Id.* ¶¶ 9–25, 53–82). Further, Plaintiff brings two causes of action against the City arising under Florida law, one for battery (Count II) and one for false imprisonment (Count III). (*Id.* ¶¶ 26–52). Finally, Plaintiff sues Moore for malicious prosecution (Count V). (*Id.* ¶¶ 83–103). Now, in the Motions, the City and Defendant Officers move for summary judgment as to each of Plaintiffs' claims against them. (Docs. 44, 46).

## II.   LEGAL STANDARD

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A).

Alternatively, the movant may meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). But "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

"The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam).

## III.   DISCUSSION

### A.   § 1983 Excessive Force Claim against the Defendant Officers (Count I) and Battery Claim against the City (Count II)

The Moving Defendants rest their arguments for summary judgment as to Counts I and II on their premise that the body cam footage conclusively demonstrates the absence of excessive force in effecting the Subject Arrest. (*See* Doc. 44, pp. 11–13; Doc. 46, pp. 13–14). Because the Court cannot find that the body cam footage demonstrates the absence of such force as a matter of law, the Court denies summary judgment as to Counts I and II.

As to Count I, brought under § 1983, the Defendant Officers assert the defense of qualified immunity applies to shield them from liability. (Doc. 46, pp. 13–14). The Defendant Officers note Plaintiff's agreement that they were acting in their discretionary authority at the time of the Subject Arrest. (*Id.* at pp. 12–13). The Defendant Officers thus assert that, for Plaintiff to avoid the application of qualified immunity, the burden shifts to Plaintiff to establish (1) a violation of Plaintiff's constitutional rights and (2) that such rights were clearly established at the time of the incident. (*Id.* at pp. 13–14); *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (setting forth these requirements); *but see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the steps of the *Saucier* test can be applied in any order the court deems fit). Ultimately, the Defendant Officers argue that Plaintiff cannot meet this burden, as the body cam footage "clearly demonstrates" that they "used reasonable and restrained force to subdue" Plaintiff. (Doc. 46, p. 14). The

Defendant Officers thus posit that Plaintiff cannot demonstrate a constitutional violation and cannot avoid the application of qualified immunity as to Count I.[6] (*Id.*).

Similarly, as to Count II, the City notes that Plaintiff must prove that the Defendant Officers used excessive force during the Subject Arrest to sustain Plaintiff's claim for battery. (Doc. 44, p. 11 (citing *City of Miami v. Sanders*, 672 So. 2d 46 (Fla. 3d DCA 1996))). Pointing to the body cam footage, the City argues the amount of force used initially "was clearly *de minimis* as the City's officers merely grabbed [Plaintiff's] arms to place them behind his back." (*Id.* at p. 12). Again citing the body cam footage, the City further asserts that "the use of force only escalated after [Plaintiff] began to actively resist the efforts of the City's officers to take [Plaintiff] into custody." (*Id.*).

For reasons already described by the Court, the Moving Defendants overestimate the evidentiary strength of the body cam footage as to the issue of excessive force. *See* discussion *supra* Section I. Simply put, while it is certainly relevant evidence and appears to weigh in the Defendant Officers' favor, the Court

---

[6]    In the Defendant Officers' Motion, they rest their argument as to qualified immunity on Plaintiff's inability to meet the first step of the *Saucier* test. (Doc. 46, p. 18 (asserting that, "[w]hen a constitutional violation is absent there is no need to 'proceed to the next step of determining if a constitutional right was clearly established,[']" and thus declining to apply the law on this issue to the facts of the instant case)). Defendant Officers do not "specifically and clearly" identify any arguments regarding the second step of the *Saucier* test until their Reply. (Doc. 60, pp. 5–6); *see WBY, Inc. v. DeKalb Cnty.*, 695 F. App'x 486, 491–92 (11th Cir. 2017) (quotation omitted). Accordingly, the Court declines to address that argument here. *See WBY, Inc.*, 695 F. App'x at 492 ("Because Rutland's current theory of probable cause was raised clearly in his reply brief only, it was within the district court's discretion to decline to address that theory.").

cannot say the body cam footage rules out any issue of material fact as to excessive force when it provides an incomplete picture of the Subject Arrest. Indeed, although the Charging Affidavit describes that Barrett "struck [Plaintiff] in the face with a closed fist," this is not depicted in the body cam footage. (Doc. 46-6, p. 3; *see* Docs. 45-6, 45-7, 46-14). In addition, while the Defendant Officers provide statements by each of the four officers who responded to the scene supporting that Plaintiff resisted arrest and that the level of force used was appropriate, Plaintiff provides an affidavit wherein Plaintiff paints a different picture. (*See* Docs. 46-7 (providing, in a statement by Howell, that Plaintiff "violently jerked his body away from me, in an apparent attempt to free himself from my grasp" and later "pulled back his right fist in an apparent attempt to strike me"), 46-6, 46-8, 46-10; *but see* Doc. 55, pp. 15–16, ¶¶ 6–8, 17 (stating, in an affidavit signed by Plaintiff, that Plaintiff "never resisted the police," that the "police threw him on the ground face down," that they "punched him on the left side of his face" and the "right side of his body" and that "one of the officers stumped [sic] his head on the back down into the concrete")).

Thus, even assuming the Moving Defendants met their burden of demonstrating the absence of a genuine issue of material fact as to the use of excessive force, Plaintiff would have met his corresponding burden of going "beyond the pleadings" to demonstrate the existence of such an issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Porter*, 461 F.3d at 1320; *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment . . . ."). Thus, "read[ing] the evidence and draw[ing] all factual inferences therefrom in the light most favorable to" Plaintiff, and "resolv[ing] any reasonable doubts in [his] favor," the Court will deny summary judgment as to Counts I and II.[7] *Skop*, 485 F.3d at 1136.

> **B.    False Imprisonment Claim against the City (Count III) and § 1983 Unreasonable Search and Seizure Claim against the Defendant Officers (Count IV)**

Plaintiff's false imprisonment claim against the City (Count III) and § 1983 claim against the Defendant Officers for unreasonable search and seizure (Count IV) both hinge on whether the Defendant Officers had probable cause for Plaintiff's arrest. *See Davis v. City of Apopka*, 78 F.4th 1326, 1333 (11th Cir. 2023) ("The existence of probable cause is an absolute bar to a § 1983 claim of false arrest and to a claim of false arrest under Florida law." (citations omitted)); *see also Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (stating same). Because the Court finds that there was probable cause to arrest Plaintiff for violating the Restraining

---

[7]    The Court notes that, in the facts section of the Defendant Officers' Motion, the Defendant Officers describe that they engaged an expert witness, Dr. Richard M. Hough ("**Dr. Hough**"), who concluded in a report (Doc. 46-15 (the "**Report**")) that their conduct was "objectively reasonable under the totality of the circumstances" in the case. (Doc. 46, p. 8). The Defendant Officers further represent that Plaintiff "did not engage an expert and did not depose Dr. Hough" and thus his qualifications and Report are "undisputed." (*Id.*). However, the Defendant Officers never mention Dr. Hough or his Report in their legal analysis, nor do they provide any legal authority to describe how the Court may consider this Report in assessing whether they used excessive force. In the absence of such argument and authority, the Court declines to consider the Report here.

Order as a matter of law, the Court will grant summary judgment to the Moving Defendants as to Counts III and IV.

An officer has probable cause for an arrest if, considering the totality of the circumstances, "a reasonable officer could conclude that there was a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (alteration accepted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).[8] "One important principle that the Supreme Court has stressed is: 'Probable cause is not a high bar.'" *Davis*, 78 F.4th at 1334 (quoting *Wesby*, 583 U.S. at 57)). A finding of probable cause "requires less than a preponderance of evidence," meaning, "probable cause does not require that it be more likely than not the person arrested for a crime is actually guilty of it." *Id.* Indeed, "[g]iven the principles applicable to probable cause determinations, it is little wonder that the Supreme Court has summarized it this way: 'The probable cause decision, by its nature, is hard to undermine, and still harder to reverse.'" *Id.* at 1338 (quoting *Kaley v. United States*, 571 U.S. 320, 339 (2014)).

Further, "in the context of a federal false arrest claim [under § 1983], an officer does not need to show that he had *actual* probable cause to obtain qualified immunity; he only needs to show that he had *arguable* probable cause." *Johnston v. Carlson*, No. 24-10862, 2025 WL 1927532, at *3 (11th Cir. July 14, 2025). "An officer has arguable probable cause if 'a reasonable officer, looking at the entire

---

[8]   "The standard for determining probable cause is the same under Florida and federal law." *Wooden v. Town of Eatonville*, No. 22-10649, 2023 WL 5091809, at *7 (11th Cir. Aug. 9, 2023) (citing *Rankin*, 133 F.3d at 1433).

legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Id.* (quoting *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)).

Finally, in assessing whether probable cause exists, "we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Rankin*, 133 F.3d at 1435 (alterations adopted) (quoting *Revels v. State of Florida*, 666 So. 2d 213, 215 (Fla. 2d DCA 1995)). Moreover, "[d]eference to on-the-spot, reasonable judgments made by officers 'may be particularly warranted in domestic disputes' because they 'require police to make particularly delicate and difficult judgments quickly' and 'violence may be lurking and explode with little warning.'" *Davis*, 78 F.4th at 1337 (quoting *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999)).

The City contends that the Moore Sworn Statement gave rise to probable cause to believe that Plaintiff had violated the Restraining Order.[9] (Doc. 44, pp. 7–9). In support, the City argues that "there is no evidence in the record to indicate that the City's officers had reason not to believe" Moore's Sworn Statement. (Doc. 44, p. 9). The City further notes that, as is stated in the Restraining Order, the

---

[9] Because the Court agrees with this argument, it does not consider the City's other grounds for seeking summary judgment here. (*See* Doc. 44, pp. 7–10). Moreover, by finding probable cause for the Subject Arrest, the Court necessarily finds that the lower standard of arguable probable cause that is required to establish the Defendant Officers enjoy qualified immunity from suit has been met. *See Toole v. City of Atlanta*, 798 F. App'x 381, 385 (11th Cir. 2019) (per curiam) (noting arguable probable cause represents a "more relaxed standard" than probable cause). Accordingly, the Court does not separately address such arguable probable cause here, nor does it consider the Defendant Officers' argument that there was arguable probable cause for the Subject Arrest based upon Plaintiff resisting the arrest without violence.

Defendant Officers were authorized to make a warrantless arrest of Plaintiff pursuant to Florida Statute § 901.15(13).[10] Accordingly, the City seeks entry of summary judgment as to Count III. (Doc. 44, pp. 7–10).

The Defendant Officers note that the bar is even lower as to Plaintiff's § 1983 claim for unreasonable search and seizure, as the Defendant Officers enjoy qualified immunity as to such a claim so long as there was "arguable" probable cause for an arrest. (Doc. 46, p. 15 (first citing *Brown v. City of Hunstville*, 608 F.3d 724, 734 (11th Cir. 2010); and then citing *Toole*, 798 F. App'x at 385)). The Defendant Officers contend that such arguable probable cause clearly existed under the totality of the circumstances in this case, entitling them to qualified immunity, and thus summary judgment, as to Count IV. (*Id.* at pp. 15–16).

The Court now considers whether, in light of the totality of the circumstances at the time of the Subject Arrest, "a reasonable officer could conclude that there was a substantial chance of criminal activity" by Plaintiff. *Washington*, 25 F.4th at 902. Immediately prior to the Subject Arrest, Plaintiff had called the Police Department to report that Moore was following him. (Doc. 43, ¶ 6). The Court pauses to note that such conduct by Moore would not have violated the terms of the Restraining Order. (*See* Doc. 45-4). Instead, the Restraining Order

---

[10]   Florida Statute § 901.15(13) states, in pertinent part, as follows:

> A law enforcement officer may arrest a person without a warrant when: There is probable cause to believe that the person has committed an act that violates a condition of pretrial release provided in [Florida Statute §] 903.047 when the original arrest was for an act of domestic violence as defined in [Florida Statute §] 741.28 . . . ."

directed Plaintiff that, if Moore "attempts to contact you, you are violating this Order if you communicate with . . . her [in return]." (*Id.*). Nor does Plaintiff assert that Moore's alleged conduct would have violated any law. (*See generally* Docs. 53, 55).

Next, after receiving Plaintiff's call, Sergeant Conde recognized Plaintiff as being the subject of Moore's Sworn Statement, which had been executed by Moore at the Police Department the prior day. (Doc. 46-6, p. 1). Accordingly, Sergeant Conde "confirmed" that Plaintiff "was still wanted." (*Id.*). Importantly, Plaintiff agrees that Moore's Sworn Statement, if true, described conduct that violated the Restraining Order. (Doc. 53, p. 12; Doc. 55, p. 9). Plaintiff was instructed to wait at the D Town store for law enforcement, and the Defendant Officers were dispatched, made contact with Plaintiff, confirmed his identity, and placed him under arrest. (Doc. 43, ¶¶ 7–10).

"Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin*, 133 F.3d at 1141 (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996)). Moreover, "[a]n identification or a report from a single credible victim or eyewitness can provide the basis for probable cause . . . ." *Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 670 (Fla. 3d DCA 2012) (quoting *City of St. Petersburg v. Austrino*, 898 So. 2d 955, 960 (Fla. 2d DCA 2005) (emphasis omitted)); *United States v. Smith*, 318 F. App'x 780, 792 (11th Cir. 2009) (holding that the victim's "identification of [Defendant] as the man who had attacked her" gave the officer

probable cause "to believe [Defendant] had committed a crime"); *Barnett v. Elsmore*, No. 23-12517, 2025 WL 1823113, at \*2–\*3 (11th Cir. July 2, 2025) (per curiam) (holding the defendant officer was entitled to qualified immunity because he had arguable probable cause for an arrest based upon the statements of two witnesses).

Further, statements of witnesses or victims can suffice to establish the existence of probable cause as a matter of law. *Arnold Rogers v. City of Orlando*, 660 F. App'x 819, 824–26 (11th Cir. 2016) (per curiam) (affirming a district court's grant of summary judgment to the defendant on the plaintiff's § 1983 claim after finding probable cause for the plaintiff's arrest based solely upon sworn statements by the victims); *Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019) (affirming the district court's grant of summary judgment as to § 1983 claim for false arrest and finding the victim's statement describing the alleged battery "gave [the officer] everything he needed" to support probable cause for the arrest); *Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1252 (S.D. Fla. 2007) (granting summary judgment to defendant officers on § 1983 false arrest claim after finding a single witness' statement that plaintiff committed a crime established probable cause for the arrest).

In light of the aforementioned authorities, the Court finds that the Moving Defendants have met their burden under Rule 56 of establishing entitlement to summary judgment regarding the existence of probable cause for the Subject Arrest. *See* FED. R. CIV. P. 56(c)(1)(A). Specifically, the Court agrees that,

considering the totality of the circumstances in the case, the Moving Defendants have established "a reasonable officer could conclude that there was a substantial chance" that Plaintiff had violated the Restraining Order. *Washington*, 25 F.4th at 902. Consequently, the burden shifts to Plaintiff, "who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter*, 461 F.3d at 1320.

In attempting to meet this burden, Plaintiff first asserts that Moore's Sworn Statement failed to establish probable cause for the Subject Arrest. (Doc. 53, p. 12; Doc. 55, p. 9). However, Plaintiff's contention buckles under the weight of the aforementioned authority. *See, e.g.*, *Arnold Rogers*, 660 F. App'x at 824–26; *Huebner*, 935 F.3d at 1188; *Whittington*, 490 F. Supp. 2d at 1252; *Rankin*, 133 F.3d at 1141; *Asad*, 78 So. 3d at 670; *Smith*, 318 F. App'x at 792; *Barnett*, 2025 WL 1823113, at \*2–\*3.

Plaintiff next asserts that the Defendant Officers failed to conduct a reasonable investigation in support of the Subject Arrest. (*E.g.*, Doc. 53, pp. 12, 15; Doc. 55, p. 10). Plaintiff emphasizes that it was he who called the police on November 7, 2019. (Doc. 53, p. 9; Doc. 55, p. 7). Yet, Plaintiff notes the lack of evidence that the Defendant Officers spoke to either Moore or Plaintiff regarding his allegation that Moore was following him and instead asserts the Defendant Officers "relied solely on" Moore's Sworn Statement. (Doc. 53, pp. 9, 12; Doc. 55, pp. 7, 9).

However, as the Court has noted *supra*, even if true, it was not a violation of the Restraining Order for *Moore* to follow *Plaintiff*. (Doc. 45-4). As such, it is difficult to ascertain why the Defendant Officers, who possessed a sworn statement setting forth a violation of the Restraining Order, would stop to question Plaintiff and Moore about alleged conduct that clearly does not do so.

Perhaps Plaintiff intends to suggest that, if Moore was following Plaintiff, it might undermine Moore's credibility. Yet, Plaintiff's argument, so construed, would still be doomed to failure. This is because the Eleventh Circuit has clearly directed that, while "[a]n officer may not ignore 'concrete evidence that obviously and definitively rules out probable cause,' . . . he is not required to seek out exculpatory evidence, . . . [n]or is he required to 'weigh the evidence in such a way as to conclude that probable cause did not exist.'" *Barnett*, 2025 WL 1823113 at *3 (first quoting *Davis*, 78 F.4th at 1344; then citing *Kelly v. Curtis*, 21 F.3d 1554, 1551 (11th Cir. 1994); and then quoting *Washington*, 25 F.4th at 902). "It is not unusual to find at the scene of a crime evidence pointing in different directions, but a law enforcement officer is not required to resolve every inconsistency found in the evidence." *Davis*, 78 F.4th at 1335 (alterations accepted and quotation omitted). As such, officers "simply are not required to 'rule out a suspect's innocent explanation for suspicious facts.'" *Id.* at 1336 (quoting *Wesby*, 583 U.S. at 61); *see, e.g.*, *Huebner*, 935 F.3d at 1185–86 (affirming grant of summary judgment based upon officer's probable cause to arrest the plaintiff for battery upon her sister despite the fact that the plaintiff had called 911 to report her sister for the battery,

the plaintiff claimed she had a cut on her arm from her sister, and the police officer had immediately arrested the plaintiff, declining to speak with two alleged witnesses). Accordingly, Plaintiff's second argument fails.

Finally, Plaintiff highlights that Moore's deposition testimony ("**Moore's Deposition**") provided details regarding the purported violation of the Restraining Order that differed in certain ways from those provided in Moore's Sworn Statement. (Doc. 53, p. 10; Doc. 55, p. 7). Plaintiff asserts that, in Moore's Sworn Statement, she stated that she was driving when she saw Plaintiff gesture at her with his hands like they were guns, while in Moore's Deposition, she stated that she was standing on the street with her uncle when this incident occurred. (Doc. 53, p. 10; Doc. 55, p. 7). Plaintiff thus posits that, if the Defendant Officers had conducted further investigation, they could have "returned to question Moore [at] home," and "if she testified similar to her deposition," they "might have . . . questioned . . . her credibility." (Doc. 53, p. 12; *see* Doc. 55, p. 10 (suggesting same)).

This argument fails for the same reasons stated above, and for at least two new ones. Moore's Deposition was taken on May 23, 2025—more than *five and a half years* after the Subject Arrest. (Doc. 46-2, p. 1). However, "[p]robable cause must be judged by the facts that existed at the time of the arrest, not evidence subsequently learned or provided to the prosecution." *Asad*, 78 So. 3d at 670. Moreover, as is noted in the City's Reply, Plaintiff's suggestion that Moore's Deposition Testimony sheds light on what the Defendant Officers *might have*

20

*thought* about Moore's Sworn Statement had they questioned her further *five years earlier* is exceedingly speculative.  (Doc. 59, pp. 2–5). Far too speculative, in fact, to defeat summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 2005))).

As a result, Plaintiff has failed to sustain his burden of establishing the existence of a genuine issue of material fact as to Counts III and IV, and the Moving Defendants are entitled to judgment as a matter of law on these counts. *See Porter*, 461 F.3d at 1320.

## IV.   CONCLUSION

As a result of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant City of Daytona Beach's Motion for Summary Judgment (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART**.

    a.  Defendant City of Daytona Beach's Motion for Summary Judgment (Doc. 44) is **GRANTED** as to Count III.

    b.  Defendant City of Daytona Beach's Motion for Summary Judgment (Doc. 44) is **DENIED** in all other respects.

2.  Defendants Travis Barrett and Collin Howell's Motion for Summary Judgment (Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**.

a.    Defendants Travis Barrett and Collin Howell's Motion for Summary Judgment (Doc. 46) is **GRANTED** as to Count IV.

b.    Defendants Travis Barrett and Collin Howell's Motion for Summary Judgment (Doc. 46) is **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on February 13, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

22